THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
JOHN J. LULEJIAN (SBN: 186783)
Assistant United States Attorney
SHAWN J. NELSON (SBN: 185149)
Special Assistant United States Attorney
Violent and Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8603/5339
     Facsimile: (213) 894-3713
     Email:    john.lulejian@usdoj.gov
               shawn.nelson@usdoj.gov

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-1048-VBF |
| Plaintiff, | GOVERNMENT'S POSITION RE: PRESENTENCE REPORT AND SENTENCING FACTORS |
| v. | |
| JAMES LANZO TURNER IV, | DATE: April 20, 2009 |
| | TIME: 10:00 a.m. |
| Defendant. | PLACE: Courtroom of the Hon. Valerie Baker Fairbank |

Plaintiff, United States of America, through its attorney of record, the United States Attorney's Office for the Central District of California, hereby files the Government's Position re: Presentence Report and Sentencing Factors. The government's position is based upon the concurrently-filed memorandum of points and authorities, the files and records of this case, the

1

Presentence Report, and any evidence or argument presented at the hearing in this matter.

Date: <u>April 6, 2009</u>     THOMAS P. O'BRIEN
                              United States Attorney

                              CHRISTINE C. EWELL
                              Assistant United States Attorney
                              Chief, Criminal Division


                              <u>/s John J. Lulejian</u>
                              JOHN J. LULEJIAN
                              Assistant United States Attorney
                              SHAWN J. NELSON
                              Special Assistant United States Attorney
                              Violent & Organized Crime Section

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . ii

I     INTRODUCTION AND RECOMMENDATION . . . . . . . . . . . . . 1

II    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III   FACTUAL CORRECTIONS TO PRESENTENCE REPORT . . . . . . . . 2

IV    THE SENTENCING GUIDELINE CALCULATION . . . . . . . . . . 2

V     CONSIDERATION OF THE SECTION 3553 FACTORS AFTER <u>BOOKER</u> . . 4

    A.   <u>The Sentencing Guidelines After Booker</u> . . . . . . . 4

    B.   <u>Consideration of the 3553(a) Factors</u> . . . . . . . . 8

        1.   Nature and Circumstances of the Offense and
            History and Characteristics of Defendant . . . . 9

        2.   Need to Reflect the Seriousness of the
            Offense . . . . . . . . . . . . . . . . . . . . 11

        3.   Deterrence of Criminal Conduct . . . . . . . . . 11

        4.   Need to Protect the Public . . . . . . . . . . . 11

        5.   Need to Provide Defendant with Education . . . 11

        6.   Need to Avoid Unwarranted Disparity in
            Sentences . . . . . . . . . . . . . . . . . . . 12

VI    WAIVER OF APPEAL . . . . . . . . . . . . . . . . . . . . 13

VII   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

FEDERAL CASES                                                    PAGE(S)

United States v. Booker,
     543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . 8

United States v. Cantrell,
     433 F.3d 1269(9th Cir. 2006) . . . . . . . . . . . . . . 8, 9

United States v. Carty,
     520 F.3d 984 (9th Cir. 2008) . . . . . . . . . . . . . . 8, 9

United States v. Guerrero-Velasquez,
     434 F.3d 1193 (9th Cir. 2006) . . . . . . . . . . . . . . 13

United States v. Hunt,
     459 F.3d 1180 (11th Cir. 2006) . . . . . . . . . . . . . 13

United States v. Nichols,
     464 F.3d 1117 (9th Cir. 2006) . . . . . . . . . . . . . . 9

United States v. Smith,
     445 F.3d 1(1st Cir. 2006) . . . . . . . . . . . . . . . . 13

United States v. Wilson,
     350 F. Supp. 2d 910 (D. Utah Jan. 13, 2005) . . . . . . 13

FEDERAL STATUTES

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3585(b) . . . . . . . . . . . . . . . . . . . . . 3

FEDERAL RULES

U.S.S.G. § 5A . . . . . . . . . . . . . . . . . . . . . . . . 3

**I**

**INTRODUCTION AND RECOMMENDATION**

Defendant James Lanzo Turner VI ("Turner") is before the court for sentencing after pleading guilty to Count One of an Indictment that charged him with Conspiracy to Distribute Heroin, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B)(i). This charge carries a mandatory minimum term of imprisonment of 60 months, followed by at least 4 years of supervised release.

As discussed below, Turner's offense level is 23 and his criminal history category is IV, resulting in an advisory guidelines range of 70 to 87 months imprisonment. The United States Probation Office ("Probation Office") recommends a sentence of 84 months imprisonment. In Turner's plea agreement, the parties stipulated that the appropriate sentence in this case would be 84 months. Thus, the government respectfully recommends a sentence of 84 months imprisonment, followed by a 4-year term of supervised release.

**II**

**FACTS**[1]

Beginning in January 2006, and continuing until February 5, 2006, Turner, co-defendants David Cole, Jr., Charles Leroy Twyman, Lashawn Andrea Lynch, and Mike LNU, and other persons entered into an agreement to possess with intent to distribute and distribute heroin. (PSR ¶ 10.) In furtherance of this

---

[1] Except as otherwise noted, pursuant to Rule 32(i)(3)(A), the government respectfully requests the Court accept the "undisputed portion[s] of the presentence report as a finding of fact."

1

conspiracy, Turner and Charles Leroy Twyman arranged for Mike LNU to provide approximately 239 grams of heroin to Cole, who would in turn provide the drug to Lynch. (PSR ¶¶ 12-14.) Turner instructed Charles Leroy Twyman to obtain an airplane ticket for Lynch in Los Angeles County, for travel from Los Angeles to Memphis, Tennessee, where Turner lived. (PSR ¶ 11.) On January 29, 2006, Turner told Charles Leroy Twyman that they could make $15,000 to $30,000 selling heroin in Memphis, Tennessee. (PSR ¶ 13.) Turner also instructed Charles Leroy Twyman to give Lynch $100 and some cocaine (2.58 grams) to calm her nerves. (PSR ¶ 16.)

Cole obtained the approximately 239 grams of heroin and on February 3, 2006, at Turner's request, Cole gave approximately 239 grams of heroin to Lynch. (PSR ¶ 15.) However, before Lynch could deliver the heroin to Turner, she was arrested at Los Angeles International Airport. (PSR ¶ 16-17.)

Following Lynch's arrest and the seizure of the 239 grams of heroin, Turner told Charles Leroy Twyman on the telephone that Charles Leroy Twyman needed to get Lynch out of jail. (PSR ¶ 20.) Turner also related that he was trying to get money together to give to his heroin supplier.

### III

### FACTUAL CORRECTIONS TO PRESENTENCE REPORT

The government does not have any factual corrections to the Presentence Report.

### IV

### THE SENTENCING GUIDELINE CALCULATION

The government concurs with the offense level calculation in

the PSR, which calculates an offense level of 23.  The government concurs with the criminal history calculation provided in the PSR, which places Turner in criminal history category IV.  (PSR ¶¶ 41-78.)  Based on an offense level of 23 and criminal history category of IV, Turner's guidelines range is 70 to 87 months.  See U.S.S.G. § 5A.

The government also concurs with the Probation Office's conclusion that a role adjustment is not appropriate.  (See PSR ¶ 31.)  The government agrees that, by negotiating and carrying out the distribution of heroin, Turner played an integral and necessary role that forecloses any assertion that he had a minor or mitigating role.

In paragraph 13 of the plea agreement, both the government and Turner agreed that,

> an appropriate disposition of this case is that the court impose a sentence of 84 months imprisonment; 4 years supervised release (with conditions to be fixed by the Court); no fine; $100 special assessment; and no restitution.  The parties also agree that no prior imprisonment (other than credits that he Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline 5G1.3.

This agreed upon sentence falls squarely near the top of the applicable Sentencing Guidelines range.  Further, the Probation Office recommends this sentence.

Accordingly, the government respectfully requests that the Court find that the appropriate offense level for Turner is 23, find the criminal history category is IV, and sentence Turner to the above terms.

# V

# CONSIDERATION OF THE SECTION 3553 FACTORS AFTER BOOKER

## A. The Sentencing Guidelines After Booker

Under the Sentencing Reform Act as modified by United States v. Booker, 543 U.S. 220 (2005), this Court must analyze and consider the Guideline factors before imposing sentences in federal criminal cases.  543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); see also United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory").  In United States v. Carty, 520 F.3d 984 (9th Cir. 2008) (en banc), the United States Court of Appeals for the Ninth Circuit declined to adopt a presumption of reasonableness for appellate review of within-Guideline sentences, but it stated that "normally" a Guideline sentence will not be found unreasonable on appeal.  520 F.3d at 988.

In Carty, the Ninth Circuit went on to provide a detailed framework for federal sentencing.  This Court must begin by determining the applicable guideline range - this range is a "starting point" and "initial benchmark."  Carty, 520 F.3d at 991.  This Court must then ensure that the parties have an opportunity to argue for the sentence that they believe is appropriate.  See id.  This Court must also consider Section 3553(a) in conjunction with these arguments.  See id.  This Court cannot presume that a Guideline sentence is reasonable and cannot give the Guidelines more or less weight than the other 3553(a)

factors.  <u>See</u> <u>id.</u>  The sentencing must be an "individualized" determination.  <u>See</u> <u>id.</u>  Importantly, in deciding the extent of any proposed departure or variance from the Guideline range, this Court must consider whether the justification is sufficiently compelling to support the degree of the variance.  <u>See</u> <u>id.</u>  The greater the variance, the more persuasive the justification should be "because other values reflected in Section 3553(a) - such as, for example, unwarranted disparity" counsel against the variance.  <u>See</u> <u>id.</u> at 991-92.  Also importantly, this Court must provide enough of an explanation to enable meaningful appellate review, and this will vary depending upon the complexity of the case.  <u>See</u> <u>id.</u> at 992.

**B.    Consideration of the 3553(a) Factors**

The applicable Sentencing Guidelines range, while not definitive, provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in Section 3553(a).  <u>See</u> <u>Cantrell</u>, 433 F.3d at 1279.  "To comply with the requirements of <u>Booker</u>, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a).  This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court consider the statutorily-designated factors in imposing a sentence."  <u>United States v. Nichols</u>, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting <u>United States v. Knows His Gun</u>, 438 F.3d 913, 918 (9th Cir. 2006)).  In the preceding and following pages of this brief, the government has detailed the facts it believes are relevant to Valdez's sentencing.

**1. Nature and Circumstances of the Offense and History and Characteristics of Defendant**

As detailed above and in the PSR, Turner helped traffic approximately 239 grams of heroin. By doing so, Turner trafficked one of the most dangerous drugs available today. Further, because of Turner's level of involvement in the drug transaction, he does not qualify for any role adjustment.

As described in the PSR, Turner has had interactions with law enforcement spanning more than 40 years. Of those interactions, three resulted in convictions that count toward his criminal history category:

(1) February 1990, felony convictions for conspiracy to aid and abet the distribution of cocaine and distribution of cocaine in the United States District Court for the District of New Mexico, for which Turner received a sentence of 156 months imprisonment followed by 5 years supervised release (PSR ¶¶ 56-60);

(2) October 2001, misdemeanor conviction for being driving under the influence of alcohol in the Los Angeles Superior Court, for which he received a sentence of 36 months probation and a fine (PSR ¶¶ 61-63); and

(3) December 2007, felony conviction for Possession of a narcotic controlled substance, in the Los Angeles Superior Court, for which he received a sentence of 24 months, which the state court authorized to run concurrent with the sentence imposed by this Court (PSR ¶¶ 64-66).

Among the other offenses committed by Turner that are not included in the calculation of his criminal history are three

additional felony drug convictions:

    (1)  May 1976, felony conviction for possession of a narcotic controlled substance for sale, in the Los Angeles Superior Court, for which he received a sentence of 5 years probation.  In 1984, the superior court revoked Turner's probation and sentenced him to state prison for a term of 5 to 15 years (PSR ¶ 51);

    (2)  February 1983, felony convictions for possession of cocaine in jail and the unauthorized possession of drugs in prison in the Los Angeles Superior Court, for which he received sentences of three and two years in prison, respectively (PSR ¶ 53);

    (3)  February 1984, felony conviction for possession of a controlled substance in the Los Angeles Superior Court, for which he received a sentence of two years in prison[2] (PSR ¶ 54); and

    (4)  December 1985, felony conviction for possession of a narcotic controlled substance for sale, in the Los Angeles Superior Court, for which he received a sentence of four years imprisonment (PSR ¶ 55).

    The PSR also notes that Turner has drug charges pending in Indiana, which he must address after sentencing in the instant case.

    Given the above convictions, as well as other convictions and interactions with law enforcement enumerated in the PSR, a sentence of 84 months imprisonment is appropriate.  An 84-month sentence also reflects the nature and circumstances of the

---

[2] Turner also was convicted of being a felon in possession, in the Los Angeles Superior Court, where he received a sentence of two years.  (PSR ¶ 54.)

10

offense and the history and characteristics of Turner.

### 2. Need to Reflect the Seriousness of the Offense

Trafficking approximately 239 grams of heroin is a serious offense. What also is troubling is that Turner's history of selling drugs despite multiple incarcerations, including his last significant incarceration following the cocaine-trafficking conviction. Thus, a sentence of 84 months imprisonment reflects the seriousness of the offense.

### 3. Deterrence of Criminal Conduct

As detailed above and in the PSR, Turner has served a significant portion of his life in prison for drug trafficking. Yet, these lengthy periods of incarceration do not seem to deter him from continuing to traffic drugs. Now at 64 years of age, Turner faces yet another term of imprisonment for his drug-trafficking activities. The government hopes that a sentence of 84-months – a sentence near the high end of the applicable Sentencing Guidelines range – will adequately deter Turner and others from future criminal conduct.

### 4. Need to Protect the Public

The public needs to be protected from individuals, like Turner, who traffic heroin. A sentence of 84 months imprisonment will protect the public and deter Turner from future criminal conduct.

### 5. Need to Provide Defendant with Education

The need to provide a defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public and the need for the

sentence to reflect the seriousness of the offense.  See United States v. Wilson, 350 F. Supp. 2d 910, 921-22 (D. Utah Jan. 13, 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as secondary consideration where serious crimes involved).  Turner will have access to many programs in the prison system to which he can avail himself.  Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

**6.   Need to Avoid Unwarranted Disparity in Sentences**

Finally, a sentence in accordance with the Guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Numerous courts have recognized that the guidelines range serves as a bulwark against sentencing disparity.  See United States v. Guerrero-Velasquez, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants.") (quoting 18 U.S.C. § 3553(a)(6)); United States v. Smith, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

In this case, a sentence of 84 months of imprisonment is

fair and reasonable.  Further, it was a sentence that was negotiated at arms-length by the parties and included an agreement by the government not to file a Section 851 enhancement, that would have imposed a 10-year mandatory minimum sentence.  Therefore, by imposing a sentence of 84 months, the Court can insure that there will be no disparity between Turner's sentence and that of any similarly situated defendant.

## VI

### WAIVER OF APPEAL

In his plea agreement, Turner waived his right to appeal this sentence, if the Court sentenced him to a sentence within the statutory maximum of 40 years.  (Plea Agreement ¶ 20.) Accordingly, if the Court chooses to advise Turner of his limited appellate rights, the government respectfully requests that the Court note on the record that Turner has waived most of his appellate rights.

\\
\\
\\
\\

**VII**

**CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court sentence defendant to a sentence of 84 months imprisonment.

Dated: April 6, 2009          Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

/s John J. Lulejian
JOHN J. LULEJIAN
Assistant United States Attorney
SHAWN J. NELSON
Special Assistant United States Attorney
Violent & Organized Crime Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

-14-